FILED
JAN 27 2021

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

FAIRUZ B.[1],

        Plaintiff,

  -v-

ANDREW SAUL,
Commissioner of Social Security,[2]

        Defendant.

19-CV-00129-MJR
DECISION AND ORDER

---

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 22)

Plaintiff Fairuz B. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and Local Civil Rule 5.5 on Social Security cases. For the following reasons, plaintiff's motion (Dkt. No. 12) is granted, the Commissioner's motion (Dkt. No. 20) is denied, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

---

[1] In accordance with the November 18, 2020 Standing Order, issued by the Hon. Frank P. Geraci, Jr., Chief Judge of the United States District Court for the Western District of New York, this Decision and Order will identify plaintiff using only her first name and last initial in order to better protect personal and medical information of non-governmental parties.
[2] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

## BACKGROUND[3]

On October 24, 2017, plaintiff filed applications for DIB, in the form of disabled widow's benefits, and SSI. (Tr. 11, 212-54)[4] She alleged disability since October 4, 2013 due to gout, high blood pressure, high cholesterol, type 2 diabetes, acute bronchitis, anxiety, rheumatoid arthritis and enlarged heart. (*Id.*) Her claims were initially denied on April 6, 2018. (Tr. 11, 122, 138) Plaintiff then requested a hearing before an administrative law judge. (Tr. 152-54) A hearing was held before Administrative Law Judge William Weir (the "ALJ") on September 28, 2018. (Tr. 61-97) Plaintiff, who was represented by counsel, testified at the hearing. (*Id.*) The ALJ also received testimony from Vocational Expert Deana Olah ("the VE"). (*Id.*) During the hearing, plaintiff added lateral femoral cutaneous neuropathy and acute heart failure as additional medical conditions contributing to her disability. (Tr. 19) On October 16, 2018, the ALJ issued a decision denying plaintiff's DIB and SSI claims. (Tr. 11-24) The Appeals Council denied plaintiff's request for review of the ALJ's determination on December 6, 2018, and this action followed. (Tr. 1-6)

Born on October 10, 1966, plaintiff was forty-six years old on the alleged onset date and fifty-one years old at the time of the hearing. (Tr. 19, 227) Plaintiff graduated from high school and previously worked as a bookkeeper from 2003 to 2006 and as a house cleaner from 2010 through 2013. (Tr. 246-47) Plaintiff indicates that she stopped working on October 4, 2013 as a result of her medical conditions. (*Id.*)

---

[3] The Court assumes the parties' familiarity with plaintiff's medical history, which is summarized in the moving papers. The Court has reviewed the medical record, but cites only the portions of it that are relevant to the instant decision.

[4] References to "Tr." are to the administrative record in this case.

2

described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

## II.  Standards for Determining "Disability" Under the Act

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that

work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or …age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the

claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

The ALJ initially explained that, in order to be entitled to disabled widow's benefits pursuant to Section 202(e) of the Act, plaintiff must be the unmarried widow of a deceased worker, who has attained the age of 50 and has a disability that began before the end of the prescribed period. (Tr. 12) Thus, the ALJ first found that plaintiff is the unmarried widow of a deceased insured worker and has attained the age of 50. (Tr. 14) Further, the plaintiff's prescribed period began on June 30, 2016, the date she was last entitled to survivor's benefits.[5] (Tr. 12) Therefore, as noted by the ALJ here, plaintiff must establish

---

[5] The prescribed period ends with the month before the month in which the claimant attains age 60, or, if earlier, either 7 years after the worker's death or 7 years after the widow was last entitled to survivor's benefits, whichever is later. (Tr. 12)

6

that her disability began on or before June 30, 2023, in order to be entitled to disabled widow's benefits. (*Id.*) The ALJ then proceeded to follow the required five-step analysis for evaluating plaintiff's claim of disability.

Under step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since her alleged onset date of October 4, 2013. (Tr. 14) At step two, the ALJ found that plaintiff has the following severe impairments: obesity, gout and lateral femoral cutaneous neuropathy. (Tr. 14-17) At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 17-18) Before proceeding to step four, the ALJ assessed plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except with no climbing of ladders, ropes or scaffolds and occasional climbing of stairs and ramps. The claimant further could perform no overhead reaching or work above shoulder level with the upper extremities and she could not perform a job where the essential function requires the crossing of legs or the wearing of tight clothing.

(Tr. 18-23) Proceeding to step four, the ALJ considered plaintiff's age, education, work experience, RFC, as well as the testimony of the VE, and found that plaintiff can perform her past relevant work as a general bookkeeper.[6] (Tr. 23-24) Thus, the ALJ ultimately concluded that plaintiff has not been under a disability, as defined by the Act, from October 4, 2013, through the date of his decision. (Tr. 24)

IV.   *Plaintiff's Challenges*

Plaintiff argues that the ALJ erred by failing to consider her cardiac conditions, namely hypertension, heart blockage, implementation of a pacemaker, and shortness of

---

[6] The ALJ noted that plaintiff would not be able to perform her past relevant work of cleaner/housekeeper because it requires a light exertional capacity. (Tr. 24)

7

breath, as severe impairments under the second step of the five-step sequential process. (See Dkt. No. 12 (Plaintiff's Memo. of Law)) For the reasons that follow, the Court finds that the ALJ's step two analysis does not require remand.

At step two of the sequential process, the ALJ must determine whether the claimant has a severe impairment. 20 C.F.R. §§404.1520(c), 416.920(c). "[T]he mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe." Smith v. Comm'r of Soc. Sec., 351 F. Supp. 3d 270, 276 (WDNY 2018). Rather, a severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§404.1520(c), 416.920(c). It is the plaintiff's burden to demonstrate that he or she has a severe impairment. See Woodmancy v. Colvin, 577 F. App'x 72, 74 (2d Cir. 2014).

Here, the ALJ provided a well-reasoned analysis as to why plaintiff's hypertension, heart blockage, and shortness of breath were not severe impairments. The ALJ explained that plaintiff visited the emergency room in August of 2018 complaining of shortness of breath, dizziness and occasional headaches over the prior few weeks. (Tr. 14) She was found to have extremely elevated blood pressure and a "third-degree AV heart block." (Tr. 14, 486-90) Plaintiff then underwent a four-day hospital stay during which time she received a cardiac pacemaker and various medications to treat her hypertension. (Tr. 14-15, 486-90) Upon discharge, her symptoms had stabilized and improved. (Id.) Her physical examination was essentially normal. (Id.) Specifically, her hypertension had improved with the implantation of the pacemaker and the prescribed medication. (Id.) She "exhibited non-labored respiration and her lungs were clear to auscultation with no

wheezes." (*Id.*) The ALJ determined, in accordance with the medical records, that plaintiff's cardiac conditions had "quickly resolved" with treatment and were not expected to last at a severe level for a continuous period of at least twelve months. (*Id.*) Thus, the ALJ did not classify plaintiff's cardiac conditions as severe impairments.

Further, even if the ALJ erred in not including plaintiff's cardiac conditions in his list of severe impairments at step two, the error was harmless because the ALJ proceeded beyond step two of the sequential process and considered these and other impairments in assessing plaintiff's RFC. (Tr. 18-23) In particular, the ALJ discussed plaintiff's hypertension, shortness of breath and her 2018 treatment for heart blockage during his RFC analysis, including both the symptoms she experienced and her course of treatment. (Tr. 19-23) He noted that plaintiff's pulmonary function testing showed only mild restrictions; that she exhibited normal chest and lung functioning on physical examinations; and that her shortness of breath was largely resolved after she received the cardiac pacemaker. (*Id.*) In fact, the ALJ specifically included, in the RFC, plaintiff's treating physician's directive not to perform overhead reaching or work above the shoulder with her left arm following her cardiac surgery. (Tr. 22-23) Thus, it is apparent that the ALJ considered plaintiff's cardiac conditions when he formulated the RFC finding for a limited range of sedentary work. *See Parker-Grose v. Astrue*, 462 Fed. Appx. 16 (2d Cir. Jan. 6, 2012) (not finding a severe impairment at step two is harmful error only when "the ALJ did not take these restrictions into account when determining [the RFC]"); *Stanton v. Astrue*, 370 F. App'x 231, 233 n. 1 (2d Cir. 2010) (errors at step two are harmless as long as the ALJ continues the sequential process).

Plaintiff next argues that the ALJ erred by failing to properly consider the opinion of Dr. Mark Zambron, her treating physician, and that this failure resulted in an RFC not supported by substantial evidence. (See Dkt. No. 12 (Plaintiff's Memo. of Law)) For the following reasons, the Court agrees.

On July 17, 2018, Dr. Zambron completed a Medical Examination for Employability Assessment addressing plaintiff's mental and physical functional capacities. (Tr. 482-83) He listed her conditions as gout, anxiety, and lateral femoral cutaneous nerve syndrome. (Tr. 483) He stated that plaintiff was unable to work due to lateral femoral cutaneous nerve syndrome and that the condition was permanent. (Tr. 482-83) With respect to plaintiff's physical functional capacity, Dr. Zambron opined that plaintiff was very limited with respect to standing, sitting, lifting, carrying, pushing, pulling and bending, and moderately limited with respect to walking, climbing stairs or other climbing. (Tr. 484) The ALJ found Dr. Zambron's opinion as to plaintiff's physical functional capacity to be "less persuasive."[7] (Tr. 22) In particular, the ALJ rejected Dr. Zambron's opinion that plaintiff is very limited in her ability to sit. (Id.)

The treating physician rule "generally requires deference to the medical opinions of a [plaintiff's] treating physician[.]". *Hallorn v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. §404.1527(c)(2) (The opinion of a treating physician is to be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record[.]"). To that end, the Social Security Regulations require the Commissioner to "always give good reasons" for the weight given to a treating source opinion. *Halloran*, 362 F.3d at 32;

---

[7] The ALJ found Dr. Zambron's opinion as to plaintiff's mental functional capacity to be "very persuasive." (Tr. 22, 484)

10

*quoting* 20 C.F.R. §404.1527(c)(2). Indeed, the reasons must be specific and supported by evidence in the record. *Marth v. Colvin*, 6:15-cv-0643, 2016 WL 3514126, *6 (WDNY June 28, 2016); *accord Blake v. Commissioner of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). When controlling weight is not given to the opinion of a treating physician, the ALJ must consider the following factors to determine how much weight to give the opinion of a treating source: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. 20 C.F.R. §404.1527(c)(2).

Here, the ALJ provided two reasons for discounting Dr. Zambron's opinion as to plaintiff's physical functioning capabilities, including her ability to sit. First, the ALJ found Dr. Zambron's opinion to be "inconsistent internally, since it appears incongruous that the claimant would be only moderately limited in walking and climbing stairs, but very limited in sitting." (Tr. 22) The ALJ also found that "there is no indication in the record that the claimant would have limitations with sitting other than her need to avoid crossing her knees while doing so." (*Id.*) Liberally construing the ALJ's explanation for giving Dr. Zambron's opinion little weight, the ALJ addressed only one of the factors in 20 C.F.R. §404.1527(c) – the consistency of the opinion with the record as a whole. *See* 20 C.F.R. §404.1527(c)(4). The ALJ's failure to provide a robust discussion of the applicable factors before giving Dr. Zambron's opinion little weight contravenes the treating physician rule.

Moreover, the two reasons offered by the ALJ for dismissing Dr. Zambron's opinion are not supported by substantial evidence and do not qualify as good reasons. Contrary

to the ALJ's assessment, Dr. Zambron's opinion as to plaintiff's physical capabilities does not appear to be "internally inconsistent". Dr. Zambron diagnosed plaintiff with lateral femoral cutaneous nerve syndrome and the ALJ acknowledged that this condition is a severe impairment. (Tr. 14, 483) Plaintiff testified that the symptoms she experiences from this condition include "a shooting pain that goes from the bottom [of her foot] all the way up to [her] lower back, and [that she has] problems sitting for a long time." (Tr. 71) She testified that the pain also occurs when she stands for a long time, and that she has to alternate frequently between sitting and standing. (*Id.*) Since the record reflects that plaintiff's nerve pain occurs when she remains sitting or standing for extended periods of time, it is not necessarily "incongruous" that plaintiff is only moderately limited in physical activities that may be of shorter duration, such as walking and climbing stairs, but is very limited in her ability to remain seated or standing for prolonged periods. Moreover, by dismissing Dr. Zambron's entire opinion on this basis, the ALJ substituted of his own lay opinion in place of the medical evidence and the diagnosis of a treatment provider. To be sure, "[i]t is improper for the ALJ to make any sort of medical determination or to set [his] own expertise against that of the treating physician." *Oatman v. Comm'r of Soc. Sec.*, 7-13-CV-595, 2014 U.S. Dist. LEXIS 123361 (NDNY July 30, 2014); *accord McBrayer v. Secretary of Health & Human Services.*, 712 F.2d 795, 799 (2d Cir. 1983). *See also Plaza v. Comm'r of Soc. Sec.*, 19 CV 3853, 2020 U.S. Dist. LEXIS 192069 (SDNY Oct. 16, 2020) ("The ALJ, however, is not a medical doctor and, as such, cannot independently interpret raw medical data as the basis to afford the treating physician's opinion less than controlling weight, which is what happened here."); *Smith v. Colvin*, 218 F. Supp.3d 168,

174 (ENDY 2016) (finding the ALJ erred by elevating his personal view of the medical evidence over the treating physician's opinion).

The ALJ's other reason for discounting Dr. Zambron's physical functional assessment — that there was no other indication in the record that plaintiff would have limitations with sitting — also is not supported by substantial evidence. To begin, the statement is conclusory and does not constitute a "good reason" under the treating physician rule. See Webb v. Colvin, 12-CV-753, 2013 U.S. Dist. LEXIS 135616 (WDNY Sept. 23, 2013) (while statements that a treating physician opinion was "not supported by treatment notes or the objective medical evidence of record" were not clearly erroneous, they failed to sufficiently articulate the "good reasons" the ALJ had for the minimal weight given to this opinion.); Doria v. Colvin, 13-CV-598; 2014 U.S. Dist. LEXIS 92456 (WDNY July 3, 2014) (remand required for further consideration of treating physician's opinion where the opinion, which was not specifically contradicted by any other medical evidence, was "summarily disregarded"). Further, there was evidence in the record that plaintiff is limited in her ability to sit, especially for extended periods of time. As noted above, plaintiff testified that she has difficulty sitting or standing for long intervals as a result of nerve pain. Upon visits to Dr. Zambron, she complained of intermittent muscle spasms on her side that rotated right to left and shooting pain down her right leg. (Tr. 369, 589) She reported left middle toe edema that was exacerbated by prolonged standing, putting on shoes and relieved by leg elevation. (Tr. 417) When Dr. Zambron initially diagnosed plaintiff with lateral femoral cutaneous nerve syndrome in June of 2017, he advised plaintiff to avoid provoking postures such as sitting cross-legged and wearing tight-fitting clothing. (Tr. at 373) One year later, he found that the nerve syndrome was permanent,

rendered plaintiff unable to work, and caused plaintiff serious limitations in her ability to, *inter alia*, sit and stand. (Tr. 482-84)[8]

For these reasons, the Court finds that the ALJ violated the treating physician rule by failing to provide good reasons for discounting Dr. Zambron's opinion as to plaintiff's physical functional capacity and by not consulting the factors in 20 C.F.R. §404.1527(c) in deciding what weight to give the opinion. On remand, the Court should further consider and properly apply the treating physician rule as to Dr. Zambron's opinion.

Th Court also finds that the ALJ's rejection of Dr. Zambron's opinion as to plaintiff's physical functional capacity resulted in an RFC that was not supported by substantial evidence. Sedentary work requires a good amount of sitting with some standing or walking.[9] As noted above, there is evidence in the record that plaintiff was limited in her ability to sit or stand for extended periods of time. Further, the VE testified that plaintiff

---

[8] The ALJ clearly credited Dr. Zambron's opinion, in July of 2017, that plaintiff's nerve syndrome required her to avoid sitting cross-legged or wear tight fitting clothing, since he incorporated these limitations in the RFC. However, as discussed in detail herein, the ALJ provided little explanation as to why he then summarily dismissed Dr. Zambron's July 2018 opinion that the nerve syndrome now caused plaintiff to be very limited in her ability to sit and stand. To be sure, an ALJ is not required to "accept or reject a medical expert's opinion *in toto*." *Annabi v. Berryhill*, 16-CV-9057, 2018 U.S. Dist. LEXIS 55411 (SDNY Mar. 30, 2018). However, "when the ALJ uses a portion of a given opinion to support a finding, while rejecting another portion of that opinion, the ALJ must have a sound reason for the discrepancy." *Id.* No such "sound reason" was provided here. *See Artinian v. Berryhill*, 16-CV-9057, 2018 U.S. Dist. LEXIS 5988 (EDNY Jan. 12, 2018) ("Federal courts reviewing administrative social security decisions decry 'cherry picking' of relevant evidence, which may be defined as inappropriately crediting evidence that supports administrative conclusions while disregarding differing evidence from the same source."); *Collins v. Colvin*, 15-CV-423, 2016 U.S. Dist. LEXIS 135900 (WDNY Sept. 30, 2016) (an ALJ "may not credit evidence that supports administrative findings while ignoring conflicting evidence from the same source").

[9] "Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one-third of the time and would generally total no more than about 2 hours of an 8-hour workday. *Sitting would generally total about 6 hours of an 8-hour workday.*" SSR 96-9p, 1996 SSR LEXIS 6; 20 CFR §§404.1567(a) and 416.967(a) (emphasis added).

14

being off-task 15% or more of the workday in order to get up and walk around, elevate her legs, or take unscheduled breaks would be considered work preclusive. (Tr. 95) The VE also testified that plaintiff would need to be able to sit and/or stand for at least 20-to-30-minute intervals in order to remain productive at their task. (*Id.*) After rejecting Dr. Zambron's opinion as to plaintiff's physical functional capacity, the ALJ was left with no opinion evidence that would support a finding that plaintiff is able to meet the sitting and standing requirements of sedentary work. In fact, the ALJ was left with no medical evidence at all as to plaintiff's ability to sit or stand over the course of a workday. Thus, an evidentiary gap was created which also requires remand. *See Smith v. Saul*, 17-CV-6641, 2019 U.S. Dist. LEXIS 102689 (WDNY June 19, 2019) ("Decisions in this district have consistently held that an ALJ's RFC determination without a medical opinion backing it is, in most instances, not an RFC supported by substantial evidence."); *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (finding that the ALJ, as a lay person, was not in a position to interpret the medical evidence); *Green v. Berryhill*, 17-CV-1229, 2019 WL 1252963, at *3 (WDNY May 31, 2019) (remanding where ALJ rejected all medical opinions leaving a gap in the record and relying on bare medical findings to determine RFC); *House v. Astrue*, 5:11-CV-915, 2013 U.S. Dist. LEXIS 13695 (NDNY Feb. 1, 2013) ("Regardless of whether the ALJ properly discounted this opinion, his rejection of the only medical opinion as to [plaintiff's] mental capacity created an evidentiary gap that requires remand.").

In the absence of a supporting medical opinion, the ALJ noted that the RFC for sedentary work was consistent with plaintiff's testimony that she can perform "a wide range of activities of daily living" such as light cleaning, showering, dishwashing, dressing

independently, and using public transportation. (Tr. 21, 23) The Court does not find this reasoning persuasive. None of the cited activities involve sitting or standing for extended periods of time nor are they indicative of plaintiff's ability to perform sedentary work, with some additional restrictions, over the course of an eight-hour workday. *See Willams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988) ("A claimant need not be an invalid to be found disabled under…the Social Security Act."); *Woodford v. Apfel*, 93 F. Supp. 2d 251 (SDNY 2000) ("the ALJ compounded his error when he concluded that [plaintiff] could perform sedentary work because she testified that she cooked and shopped for herself, and used public transportation [since] [s]uch activities do not by themselves contradict allegations of disability, as people should not be penalized for enduring the pain of their disability to care for themselves.").

On remand, the ALJ should also further develop the record as to plaintiff's ability to sit and stand over the course of an eight-hour workday.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings is granted (Dkt. No. 12), defendant's motion for judgment on the pleadings is denied (Dkt. No. 20), and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

SO ORDERED.

Dated:   January 27, 2021
         Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge